**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL
DIVERSITY, et al.,

           Plaintiffs,

v.                                          No. 20-cv-0146 (EGS)

DAVID BERNHARDT, et al.,

           Defendants,

<u>**MEMORANDUM OPINION**</u>

I.   **Introduction**

    Plaintiffs, Center for Biological Diversity and Healthy Gulf, brought this action against David Bernhardt, in his official capacity as Secretary of the United States Department of the Interior, and the United States Fish and Wildlife Service (the "Service") pursuant to the citizen suit provisions of the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g). Compl., ECF No. 1 ¶ 1.[1] Plaintiffs sought declaratory and injunctive relief for the Service's failure to comply with ESA deadlines in determining whether the Pascagoula Map Turtle and Pearl River Map Turtle (together "the Map Turtles") "warrant protection as endangered or threatened under the [ESA]." *Id.*

---

[1] When citing electronic filings throughout this opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

On July 2, 2020, the Court granted the Parties' request to approve the Stipulated Settlement Agreement, maintain jurisdiction to enforce the Agreement, and dismiss the case. *See* Minute Order (July 2, 2020). Pending before the Court is the Plaintiffs' Motion for Attorneys' Fees and Costs. *See* Pls.' Mot. for Atty's' Fees & Costs ("Pls.' Mot."), ECF No. 18. For the following reasons, the Court **GRANTS** Plaintiffs' Motion for Attorneys' Fees and Costs.

## II. Background

Plaintiffs are two non-profit conservation organizations focused on the preservation of imperiled species and their habitats. *See* Compl., ECF No. 1 ¶¶ 15-19. The ESA's petition process allows "any interested person [to] petition the Service to list a species as threatened or endangered." Decl. of Gina Shultz ("Shultz Decl."), ECF No. 19-1 ¶ 3. In April 2010, Plaintiffs petitioned the Service seeking to have the Map Turtles listed as endangered or threatened under the ESA. *See* Compl., ECF No. 1 ¶ 5. After receiving Plaintiffs' petition, the Service issued a 90-day finding in accordance with 16 U.S.C. § 1533(b)(3)(A), concluding that listing the Map Turtles under the ESA "may be warranted." *See* Shultz Decl., ECF No. 19-1 ¶ 13. Under the ESA, this finding required the Service to determine whether the Map Turtles warranted listing as endangered or

threatened within twelve months of Plaintiffs' petition. 16 U.S.C. § 1533(b)(3)(B).

Between 2007 and 2010, the Service received a substantial number of petitions, resulting in a backlog of evaluations for it to complete. *See* Shultz Decl., ECF No. 19-1 ¶ 5. The record is silent as to any updates on the Services' evaluation of the Map Turtles between 2010, when it issued its 90-day finding, and 2015, when the Service enlisted the help of a species expert to conduct Map Turtle surveys from 2015 to 2018. *Id.* ¶ 9, 13-14. In 2016, the Service created a "comprehensive National Listing Workplan that priorities [its] listing workload based on the needs of candidate and petitioned species." *Id.* at ¶¶ 5-6; *see* Methodology for Prioritizing Status Reviews and Accompanying 12-Month Findings on Petitions for Listing under the Endangered Species Act, 81 Fed. Reg. 49248 (July 27, 2016) ("Prioritization Methodology"). The Service expected the surveys of the Map Turtles to be completed in December 2019, and consequently placed the Map Turtles on the Service's Workplan for fiscal year 2021. *See* Shultz Decl., ECF No. 19-1 ¶ 13.

Pursuant to the ESA's notice requirements, Plaintiffs sent Defendants notices of intent to file suit on November 13, 2018 and October 4, 2019. *See id.* at ¶ 14; Ltr from E. Bennett to D. Bernhardt & M. Everson Re: 60-Day Notice of Intent to Sue (Oct. 8, 2019), ECF No. 19-2; Ltr from J. Totoiu to R. Zinke, et al.

Re: 60-Day Notice of Intent to Sue (Nov. 13, 2018), ECF No. 19-
4. Following each notice, the Service responded to Plaintiffs
indicating its intent to complete the listing finding for the
Map Turtles by the end of the 2021 fiscal year. *See* Ltr from G.
Shultz to J. Totoiu Re: Reply to Oct. 4, 2019 Ltr (Dec. 3,
2019), ECF No. 19-3; Ltr from G. Shultz to J. Totoiu Re: Reply
to Nov. 13, 2018 Ltr (Feb. 13, 2019), ECF No. 19-5. Plaintiffs
filed suit on January 21, 2020 "to compel Defendants to complete
a '12-month finding' for the Pascagoula map turtle and Pearl
River map turtle by a date certain." Pls.' Mot., ECF No. 18 at
8.

On June 12, 2020, the Parties filed a Stipulated Settlement
Agreement requiring the Service to complete the listing
determination of the Map Turtles on or before October 29, 2021.
*See* Stipulated Settlement Agreement (the "Agreement"), ECF No.
15 at 2. On July 2, 2020, the Court entered an Order
incorporating the terms of the Agreement and permitting the
Court to maintain jurisdiction to enforce the Order and terms of
the Agreement. *See* Minute Order (July 2, 2020) (the "July 2,
2020 Order"). The Agreement allowed for Plaintiffs to seek
attorneys' fees and costs. *Id.*

Plaintiffs filed their Motion for Attorneys' Fees and Costs
on October 2, 2020. *See* Pls.' Mot., ECF No. 18. Defendants filed
their opposition on October 15, 2020, and Plaintiffs' reply

brief was filed on October 23, 2020. *See* Defs.' Resp. in Opp. to
Mot. for Fees ("Defs.' Opp."), ECF No. 19; Pls.' Reply Mem.
Supporting Their Entitlement to Att'ys Fees & Costs ("Pls.'
Reply"), ECF No. 20. The Court granted the Parties' Joint Motion
to Bifurcate the Issues of Entitlement to, and Amount of
Attorneys' Fees and Costs. Minute Order (Jan. 14, 2021).
Therefore, the only issue before the Court is whether an award
of attorneys' fees and costs is appropriate here.

### III. Legal Standard

The ESA provides that a court "may award costs of
litigation (including reasonable attorney and expert witness
fees) to any party, whenever the court determines such award is
appropriate." 16 U.S.C. § 1540(g)(4). An award of attorneys'
fees is "appropriate," when the moving party has attained "some
success on the merits." *Ruckelshaus v. Sierra Club*, 463 U.S.
678, 682 & n.1 (1983).[2] The "whenever appropriate" standard
utilized in the ESA also authorizes recovery "to so-called
catalyst parties who obtain, through settlement or otherwise,
substantial relief prior to adjudication on the merits." *Sierra
Club v. EPA*, 322 F.3d 718, 719 (D.C. Cir. 2003). To award
attorneys' fees and costs under the catalyst theory, the

---

[2] The ESA attorneys' fees provision does not contain the
"prevailing party" language like other fee-shifting provisions;
however, a prevailing party would clearly meet the requirement
for achieving some success on the merits.

plaintiff must show: (1) "the defendant provided some of the benefit sought by the lawsuit," (2) the claim "was at least colorable, not frivolous, unreasonable, or groundless," and (3) the suit "was a substantial or significant cause of defendant's action providing relief. *Id.* at 726-27.

## IV. Analysis

As an initial matter, the Parties disagree as to whether the catalyst theory's three-thresholds must be met in this case. Plaintiffs assert that the catalyst theory need not be applied where the party seeking attorneys' fees has obtained success on the merits through court-ordered, judicially enforceable relief. Pls.' Reply, ECF No. 20 at 5. Defendants contend that even though the Parties entered into a settlement agreement in this case, Plaintiffs must still satisfy the catalyst theory's three threshold test to be entitled to fees. Defs.' Opp., ECF No. 19 at 9.

The Court agrees with Plaintiffs that the catalyst theory is a secondary way for a court to award attorneys fees, and a court does not have to reach it when a party has obtained success on the merits. The Supreme Court has specifically distinguished between the catalyst theory of recovery and relief on the merits, acknowledging that "the catalyst theory falls on the other side of the line" from relief on the merits. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health &*

*Hum. Res.*, 532 U.S. 598, 605 (2001) (internal quotations omitted). Moreover, the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has explicitly stated that a "judicial determination on the merits" would "make the catalyst notion irrelevant." *Pub. Citizen Rsch. Grp. v. Young*, 909 F.2d 546, 549 (D.C. Cir. 1990).

Further, the Defendants have not pointed to any cases where the catalyst theory was applied to a case where the party moving for fees obtained judicially enforceable relief on the merits. In each of the cases applying the catalyst theory cited by the Defendants, the substantive claims were dismissed before the courts ever made any decisions on the merits. *See, e.g.*, *Conservation Force v. Salazar*, 753 F. Supp. 2d 29, 31 (D.D.C. 2010) (applying catalyst theory where claims were dismissed for lack of subject matter jurisdiction and mootness); *Friends of Animals v. Salazar*, 670 F. Supp. 2d 7, 12–16 (D.D.C. 2009) (applying catalyst theory where court dismissed plaintiff's substantive claims where the issues were moot because the government already acted on the relief sought). The Court concludes that success on the merits of a claim negates the necessity for the catalyst theory.

Next, the Court must determine whether the July 2, 2020 Order and Agreement here is equivalent to success on the merits to make an award of attorneys fees appropriate. Courts have

found that success on the merits includes both formal adjudication by the court and consent decrees. *See Buckhannon*, 532 U.S. at 604. Plaintiffs contend the Agreement is "functionally identical to a consent decree since compliance with it is enforceable by the Court." Pls.' Reply, ECF No. 20 at 5, n. 1. Defendants do not dispute that a consent decree would be the type of relief warranting attorneys' fees, but they do not address whether the Agreement is equivalent to a consent decree or otherwise constitutes success on the merits. *See* Defs.' Opp., ECF No. 19 at 9.

The Court agrees with the Plaintiffs that the Court's July 2, 2020 Order incorporating the Agreement is sufficient for the Court to appropriately award attorneys' fees because, much like a consent decree, the Agreement and Order alter the legal relationship between the parties. A consent decree is "an agreement that the parties desire and expect will be reflected in, and enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Cato Inst. v. SEC*, 4 F.4th 91, 95 (D.C. Cir. 2021). In *Buckhannon*, the Supreme Court explained that a consent decree creates the "material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." 532 U.S. at 604; *see also Carbonell v. INS*, 429 F.3d 894, 888-89 (9th Cir. 2005) (awarding attorneys' fees to plaintiff who obtained a

court order incorporating a voluntarily stipulated stay of deportation). The July 2, 2020 Order to enforce the terms of the Parties' Agreement similarly altered the legal relationship of the Parties in this case. The Order and Agreement provided the Plaintiffs with legal recourse if the Defendants failed to abide by the terms of the Agreement. *See* Minute Order (July 2, 2020). Therefore, for the reasons above, the Court does not need to reach the question of whether Plaintiffs' suit was a catalyst in bringing about the listing determination.

The Court concludes that the Order and Agreement here constitute success on the merits. Therefore, the Court **GRANTS** Plaintiffs' Request for Attorneys' Fees and Costs under 16 U.S.C. § 1540(g)(4).

## V.   Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Attorneys' Fees and Costs. An appropriate order accompanies this Memorandum Opinion.

**Signed:     Emmet G. Sullivan**
            **United States District Judge**
            **July 15, 2024**